**EXHIBIT A**

## CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

I recognize and acknowledge that the business in which Universal Services of America, LP together with its subsidiaries, affiliates and related companies (collectively referred to as the "Company") is engaged is highly competitive, and the Company's success is, and will continue to be, substantially based on the Company's "Confidential Information" (as defined below).

In the course of providing services to the Company as an employee, I have had, or will have, access to certain Confidential Information. In consideration for the opportunity to provide services, or to continue providing services, to the Company, I hereby agree to abide by all terms and provisions set forth in this Confidentiality and Non-Solicitation Agreement (the "Agreement").

1.      **Confidential Information Defined.** "Confidential Information" means: (a) any "trade secret" as defined in California Civil Code section 3426 et seq.; and (b) any information not widely and readily accessible to the general public that becomes known to me, directly or indirectly, as a result of my contact with the Company, which relates to the business, finances or operations of the Company, its clients, vendors or any other third party with whom the Company has an existing or prospective relationship. Such Confidential Information includes, without limitation, business and financial information, technical information, know-how and ideas. This information may relate, for example, to technology, processes, products, programs, software in source or object code, improvements, developments, discoveries, inventions, computer hardware, computer software, vendors, suppliers, consultants, design, research, development, engineering, accounting, selling, marketing, pricing, staffing, security protocols, post orders, and any actual or contemplated trademark, service mark, trade name or patent. The information described in this Section 1 is Confidential Information no matter how obtained, and regardless of whether such information is intangible (such as a fact known to me but not recorded), recorded in written form (such as a letter, memorandum or other document), or otherwise recorded (such as a photograph, videotape, audiotape, computer disk, or other electronic media). By way of example and not limitation, such information would be Confidential Information regardless of whether I acquired it by observing documents, things or people, by direct communications with an employee, owner, manager, or contractor of the Company, or by overhearing conversations on the telephone or otherwise. Confidential Information expressly includes the identities, goals, needs, preferences and strategic plans of individuals and entities served by the Company (collectively, "Company Clients"). I understand and acknowledge that information concerning Company Clients has independent economic value to the Company and is not readily ascertainable from public sources. I further understand and acknowledge that the Company has expended considerable time and effort to develop, compile and protect the confidentiality of that information.

2.      **No Disclosure**. I agree that at all times, both during and after the time when I am providing services to the Company, I must maintain the confidentiality of all Confidential Information. That is, unless I have received prior express written consent from the Company's CEO in each instance, I will not summarize, copy, disclose, reverse engineer, or otherwise communicate any Confidential Information to any person or entity, whether directly or indirectly, except to the limited extent actually necessary to perform services for the Company. Notwithstanding the foregoing, nothing in this Agreement prohibits me from reporting possible violations of law or regulation to any government agency or entity or making other disclosures that are protected under the whistleblower provisions of federal, state, or local law or regulation. Solely in connection with such reporting, I understand that I can disclose Confidential Information, in confidence, to a government official or to an attorney to address possible violations of the law; however, any disclosure of Confidential Information must be in good faith and effectuated in a manner that prevents the dissemination of Confidential Information beyond those persons necessary to make the report or filing, such as filing the Confidential Information under seal and otherwise preventing it from being publicly disclosed. I understand that while I am encouraged to bring any such possible violation to the attention of the Company, I do not need the prior authorization of Company to make any such reports or disclosures to these entities.

3.      **Return of Confidential Information**. If the Company provides me with any Confidential

Information in a tangible form, I agree to return all such materials (including originals and all copies thereof) immediately to the Company upon request. I recognize that the unauthorized taking of any Confidential Information may be a crime under section 499c of the *California Penal Code*, and may also result in civil liability under sections 3426.1 through 3426.11 of the *California Civil Code* and section 2860 of the *California Labor Code*.

4.  **Ownership Rights**. I hereby acknowledge and agree that all original works of authorship that are made by me (in whole or in part, either alone or jointly with others) during the period that I am performing services for the Company and that are protectable by copyright ("Works") shall be deemed "works made for hire" for the Company within the meaning of the copyright laws of the United States, and the Company shall be deemed to be the sole author thereof in all territories and for all purposes. I agree that all "Inventions" (which includes patentable or non-patentable inventions, original works of authorship, derivative works, trade secrets, trademarks, copyrights, service marks, discoveries, patents, technology, algorithms, computer software, source or object code, application programming interfaces, protocols, formulas, compositions, ideas, designs, processes, techniques, know-how and data and all improvements, rights and claims related to the foregoing), which I make, conceive, reduce to practice or develop (in whole or in part, either alone or jointly with others) during the period that I am performing services for the Company, shall be the sole property of the Company to the maximum extent permitted by law. To the extent any ownership rights in any Works, Inventions or Confidential Information might be deemed to reside in me, I agree to and hereby do irrevocably assign to the Company, without further consideration, all of my right, title and interest, including, without limitation, all intellectual and industrial property and proprietary rights that currently exist or may exist in the future anywhere in the world ("Rights"), for all purposes, without conditions or limitations. Notwithstanding the foregoing, I hereby acknowledge that the Company has notified me that the assignment provided for in this Agreement shall not apply to any invention that qualifies fully for exemption from assignment under the provisions of section 2870 of the *California Labor Code*, which provides as follows:

> "(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer. (b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

5.  **No Solicitation/Interference**. While I am providing services to the Company, I will not provide services, directly or indirectly, to any individual or entity other than the Company, if such person or entity is engaged in, or preparing to engage in, the business of developing and running a private patrol/security services business.

I further agree that while I am providing services to the Company, and for a period of two (2) years after I stop providing services to the Company for any reason, I will not use any Confidential Information to solicit or attempt to solicit, on behalf of any person or entity other than the Company, business from any Company Client I serviced, directly or indirectly, as a result of my employment with the Company. I further agree that while I am providing services to the Company, and for a period of two (2) years after I stop providing services to the Company for any reason, I will not solicit or attempt to solicit for employment, on behalf of any person or entity other than the Company, any Company employee or any employee employed by the Company six (6) months prior to the end of Employee's employment with the Company.

6. **Equitable Relief and Liquidated Damages**. I acknowledge and agree that the provisions set forth in this Agreement are necessary and reasonable to protect the interests of the Company, and that any breach or threatened breach of any provision of this Agreement by me, or at my direction, would cause great and irreparable harm to the Company, for which there would be no adequate remedy at law. Therefore, in addition to any other rights and remedies the Company may have, I agree that the Company, without the necessity of proving actual damages, shall be entitled to temporary and permanent injunctive relief to prevent me from breaching or continuing to breach this Agreement. I further agree that the Company shall be entitled to such relief without posting a bond or making any undertaking. Any such requirement of a bond or undertaking is hereby waived by me, and I acknowledge that in the absence of such a waiver, a bond or undertaking might otherwise be required by the Court. I further acknowledge and agree that damages may result if this Agreement is breached and that damages for such breach are difficult to ascertain, and accordingly, I agree to pay to the Company the sum of $100,000 for each such breach as liquidated damages in the event that I breach this Agreement. I also acknowledge and agree that the sum of $100,000 is not unreasonable under the circumstances existing at the time this Agreement is entered into.

7. **Not an Employment Agreement**. This Agreement is not intended to, and does not, constitute an express or implied contract of employment or services for any purpose. Nothing in this Agreement shall modify the at-will nature of my employment with the Company.

8. **Successors and Assigns**. This Agreement shall inure to the benefit of the Company's successors and assigns.

9. **Governing Law and Forum**. This Agreement shall be construed in accordance with, and governed by, the laws of the State of California. If I have entered into a written arbitration agreement with the Company, the provisions of that arbitration agreement shall govern the resolution of any dispute between the Company and me arising out of or relating to this Agreement, provided that such dispute involves any claim subject to arbitration under such arbitration agreement, except that, pursuant to California Code of Civil Procedure 1281.8, I understand that either party may apply to a California court for any provisional remedy, including a temporary restraining order or preliminary injunction. To the extent any legal action arising from or relating to this Agreement may be properly filed in state or federal court, I hereby consent to the personal jurisdiction of the state courts located in Orange County and the state and federal courts located in Orange County, California, and agree not to seek a transfer of venue from such jurisdiction. With respect to any legal proceeding or portion thereof that is properly adjudicated in state or federal court, the prevailing party shall recover all its costs incurred in prosecuting or defending such legal proceeding or portion thereof, including its reasonable attorneys' fees.

10. **Entire Agreement**. This Agreement expresses my entire understanding with respect to the matters addressed herein, and supersedes any prior or contemporaneous agreement between the Company and me, whether oral or written, relating to such matters. This Agreement constitutes the entire agreement between the parties with respect to the matters addressed herein. This Agreement may only be modified or canceled by a writing signed by the Company's President and me.

11. **Severability**. If any provision of this Agreement is adjudged unenforceable, such adjudication shall in no way affect any other provision of this Agreement or the validity or enforcement of the remainder of this Agreement, and the provision affected shall be altered only to the minimum extent necessary to make it conform to the applicable law.

12. **Representations and Warranties**. I hereby represent and warrant that: (a) I have not used and will not use, for the benefit of the Company, or disclose to the Company, any trade secret or other confidential information that belongs to any third party unless I have obtained, in advance, appropriate written consent for such use or disclosure from such third party; (b) I have the right to grant to the Company all of the rights that are granted under this Agreement, and that no permission, grant or consent of any other person is necessary in order for me to grant to the Company the rights

hereunder; and (c) I have not entered into any agreements with any other party that would interfere with or be inconsistent with my representations and warranties herein.

13. **Indemnification.** To the full extent permitted by law, I shall, and hereby do, indemnify, defend, and hold harmless the Company and all of its officers, directors, members, managers, employees, shareholders and agents (collectively, "Indemnified Parties") from and against any actual loss, expense or other liability (including, without limitation, reasonable attorneys' fees) incurred by such Indemnified Parties as a result of: (a) any of my representations and warranties herein being untrue; or (b) my breach or threatened breach of this Agreement.

14. **Effective Date.** This Agreement, no matter when signed by me, is effective as of the date I first acquired knowledge of any Confidential Information.

15. **Survival of Agreement.** Except as expressly set forth herein, my obligations under this Agreement continue for all time. I hereby consent to the Company notifying any third party, for whom I perform or intend to perform services, about my obligations under this Agreement.

16. **Waiver.** The waiver by the Company of a breach of any provision of this Agreement shall not be construed to be a waiver of any other or subsequent breach by me, nor shall it be construed as a continuing waiver.

**ACCEPTANCE OF AGREEMENT**

**I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT, AND THAT I AGREE TO ABIDE BY ALL ITS TERMS. I FURTHER ACKNOWLEDGE THAT I HAVE BEEN ADVISED TO CONSULT WITH MY LEGAL COUNSEL PRIOR TO SIGNING THIS AGREEMENT.**

**IN WITNESS WHEREOF**, the undersigned hereto set their hands and seals as of the dates set forth below.



☑ **Employee Signature** Joseph Calcote 12/7/2018 6:39 PM
(checking the checkbox above is equivalent to a handwritten signature)

☐ **Company Representative Signature**
(checking the checkbox above is equivalent to a handwritten signature)