MATTHEW T. SINNOTT (SBN 229468)
msinnott@martensonlaw.com
DAVID L. LEWIS (SBN 284537)
dlewis@martensonlaw.com
MARTENSON, HASBROUCK & SIMON LLP
5800 Armada Drive, Suite 101
Carlsbad, California 92008
Telephone:   (760) 683-8499
Facsimile:   (404) 909-8120

Attorneys for Plaintiff
Universal Building Maintenance LLC d/b/a Allied Universal Janitorial Services

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL BUILDING MAINTENANCE LLC D/B/A ALLIED UNIVERSAL JANITORIAL SERVICES<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH CALCOTE,<br><br>Defendant. | CASE NO.: 8:22-cv-01125-JVS-DFMx<br><br>**PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**<br><br>DATE:   October 24, 2022<br>TIME:   1:30 p.m.<br>JUDGE: Honorable James V. Selna<br>CTRM:  10C |

# <u>TABLE OF CONTENTS</u>

I.   PROCEDURAL HISTORY ..................................................................................2

II.  STATEMENT OF FACTS ..................................................................................4

    A.   Defendant's Employment and Scope of Responsibilities. ....................4

    B.   Defendant's Access to Confidential Information and Trade Secrets. ..................5

    C.   Allied Universal's Protection of its Confidential Information and Trade Secrets. ..................................................................................5

    D.   Calcote Executed a Confidentiality Agreement with Allied Universal. ..............6

    E.   Calcote Violated the Agreement and Stole Confidential and Trade Secret Information from Allied Universal. ....................................11

    F.   Calcote Refuses to Return Confidential and Trade Secret Information. ............12

III. ARGUMENT ....................................................................................................13

    A.   Jurisdiction .......................................................................................13

    B.   Default Judgment is Warranted Against Defendant ..........................13

        1.   All Six Causes of Action in the Complaint Have Substantive Merit and Are Sufficiently Alleged (Eitel Factors 1 and 2). ...........................14

            a)   Count I - Violations of 18 U.S.C. § 1832 (Defend Trade Secrets Act of 2016) ....................................14

            b)   Count II – Breach of Contract .....................................16

            c)   Count III – Misappropriation of Trade Secrets in Violation of the Uniform Trade Secrets Act, California Civil Code §3426 et seq. ....................................18

            d)   Count IV – Breach of the Duty of Loyalty ..................18

            e)   Count V – Conversion ..................................................19

            f)   Count VI – Intentional Interference with Prospective Economic Advantage ..................................................20

        2.   The Remaining Eitel Factors Support Entry of Default Judgment (Eitel Factors 3-7) ....................................21

            a)   There is Minimal Possibility of Dispute Concerning Material Facts. ..............................................................21

            b)   There is No Evidence that Default Was Due to Excusable Neglect. ..................................................21

            c)   Allied Universal Will Suffer Prejudice if Default Judgment is Not Entered. ....................................22

            d)   Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment ....................................23

            e)   Sum of Money at Stake ................................................23

    C.   Remedies and Damages ....................................................................24

        1.   Permanent Injunction ..............................................................24

        2.   Damages ...................................................................................25

i

3.   Attorneys' Fees ........................................................................26

**IV. CONCLUSION** ........................................................................27

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aldabe v. Aldabe*
   616 F.2d 1089, 1092-93 (9th Cir. 1980)................................................................13

*Alta Devices, Inc. v. LG Elecs., Inc.*
   343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).........................................................18

*American Credit Indemnity Co. v. Sacks*
   213 Cal.App.3d 622, 637 (1989)..........................................................................15

Appling v. Wachovia Mortg., FSB
   745 F. Supp. 2d 961, 974 (N.D. Cal. 2010).........................................................16

*Atel Fin. Corp. v. Quaker Coal Co.*
   132 F.Supp.2d 1233, 1244 (N.D. Cal. 2001).......................................................17

*Cadence Design Systems, Inc. v. Avant! Corp.*
   29 Cal.4th 215, 223 (2002)..................................................................................26

CDF Firefighters v. Maldonado
   158 Cal. App. 4th 1226, 1239, 70 Cal.Rptr.3d 667 (Ct. App. 2008)....................16

*CFTC v. AM. Bullion Exch. ABEX Corp.*
   2014 WL 12603558, at *11 (C.D. Cal. Sept. 16, 2014) ......................................24

*CFTC v. Emerald Worldwide Holdings, Inc.*
   No. CV03-8339AHM, 2005 WL 1130588, at *13 (C.D. Cal. Apr. 19, 2005) .......25

*CFTC v. Safevest, LLC*
   2009 WL 2448116, at*4-5 (C.D. Cal. July 13, 2006) ..........................................24

*Cisco Sys., Inc. v. Chung*
   462 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020 ......................................................18

*Courtesy Temporary Service, Inc. v. Camacho*
   222 Cal.App.3d 1278, 1287 (1990) .....................................................................15

*Danning v. Lavine*
   572 F.2d 1386, 1388 (9th Cir. 1978) ...................................................................14

*DirecTV, Inc. v. Hoa Huynh* 503 F.3d 847, 854 (9th Cir. 2007................................14

*E.D.C. Techs. V. Seidel*
   216 F.Supp.3d 1012, 1016 (N.D. Cal. 2016).......................................................18

*eBay v. MercExchange, LLC* 547 U.S. 388, 391 (2006).........................................24

*Eitel v. McCool*
   782 F.2d 1470, 1471-72 (9th Cir. 1986)..............................................................13

*Garcia v. Fidelity Mortgage Company, No. C*
   05-05144 MHP, 2009 WL 1246921, at *4 (N.D. Cal. May 5, 2009)....................23

*Garden City Boxing Club, Inc. v. Aranda*
  384 F. App'x 688, 689 (9th Cir. 2010) ....................................................... 25

*Halsey v. Colonial Asset Mgmt.*
  No. 5:13-cv-02025, 2014 WL 12601015, at *2 (C.D. Cal. July 17, 2014) ........... 22

Huong Que, Inc. v. Luu
  150 Cal.App.4th 400, 410, 58 Cal.Rptr.3d 527 (2007) ............................. 18

*In re Tuli*
  172 F.3d 707, 712 (9th Cir. 1999) ........................................................ 13

*JEP Grp., Inc. v. San Jose* 2019 WL 8645651, *2 (C.D. Cal. May 22, 2019) ........... 14

*Kewanee Oil Company v. Bicron Corporation*
  416 U.S. 470, 471 (1974) .................................................................... 23

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.*
  725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) ............................................. 23

*Morroccanoil, Inc. v. Allstate Beauty Products, Inc.*
  847 F.Supp.2d 1197, 1203-04 (C.D. Cal. 2012) ....................................... 24

*Oakdale Village Group v. Fong*
  43 Cal.App.4th 539, 543-544 (1996) ..................................................... 19

*Panavision Int'l, L.P. v. Toeppen*
  945 F.Supp. 1296, 1305 (C.D. Cal. 1996) ............................................... 20

*Pellerin v. Honeywell Int'l, Inc.*
  877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) ............................................. 14

*PepsiCo v. California Security Cans*
  238 F.Supp.2d 1172, 1178 (C.D. Cal. 2002) ........................................... 25

*PepsiCo v. Triunfo-Mex, Inc.* 189 F.R.D. 431, 432 (C.D. Cal.1999) ................. 14

*PepsiCo, Inc.*
  238 F. Supp. 2d at 1176 (C.D. Cal. 2002) .............................................. 23

*PepsiCo, Inc. v. California Sec. Cans*
  238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ......................................... 23

*Philip Morris USA, Inc. v. Castworld Prod., Inc.*
  219 F.R.D. 494, 502 (C.D. Cal. 2003) .................................................... 24

*Philip Morris, USA, Inc. v. Castworld Prods, Inc.*
  219 F.R.D. 494, 498 (C.D. Cal. 2003) .................................................... 14

*Sky Billiards, Inc. v. Loong Star, Inc.*
  No. EDCV 14-921 JGB, 2016 WL 6661175, at *3 (C.D. Cal. Mar. 17, 2016) ....... 14

*Spates v. Dameron Hosp. Assn.*
  114 Cal.App.4th 208, 221 (2003) ......................................................... 19

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

4874-4625-8480, V. 1

*Talavera Hair Prod., Inc. v. Taizhou Yungsung Elec. Appliance Co.*
2021 WL 3493094, at *15 (S.D. Cal. Aug. 6, 2021)........................................................24

*TeleVideo Systems, Inc. v. Heidenthal*
826 F.2d 915, 917-18 (9th Cir. 1987)..........................................................................21

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*
117 F.Supp.3d 1092, 116 (C.D. Cal. 2015)..................................................................20

*Vogel v. Rite Aid Corp.*
992 F.Supp.2d 998, 1007 (C.D. Cal. 2014)..................................................................22

*Weber, Lipshie & Co. v. Christian*
52 Cal.App.4th 645, 654 (1997)....................................................................................17

*Wecosign, Inc. v. IFG Holdings, Inc.*
845 F.Supp.2d 1072, 1083-84 (C.D. Cal. 2012)..........................................................25

*WeRide Corp. v. Huang*
379 F.Supp.3d 834, 845-846 (N.D. Cal. 2019) ...........................................................15

**Statutes**
18 U.S.C. § 1832.................................................................................................i, 14

18 U.S.C. § 1836...................................................................................................13

18 U.S.C. § 1839(3)..............................................................................................15

28 U.S.C. § 1331...................................................................................................13

28 U.S.C. § 1367...................................................................................................13

Cal. Civ. Code § 1671(b)......................................................................................17

Cal. Civ. Code § 3426.1(b)(2) .............................................................................15

Cal. Civ. Code § 3426.1(d)(1)-(2) .......................................................................18

California Civil Code § 3426................................................................................18

California Civil Code § 3426.1(d) .......................................................................18

California Civil Code §3426.............................................................................i, 18

Fed. R. Civ. P. 55(b)...................................................................................2, 13, 14

Fed. R. Civ. P. 55(b)(2).........................................................................................14

Fed. R. Civ. P. 8(b)(6)...........................................................................................14

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

4874-4625-8480, V. 1

**TO: DEFENDANT JOSEPH CALCOTE:**

**PLEASE TAKE NOTICE** that, on October 24, 2022, at 1:30 p.m., Plaintiff UNIVERSAL BUILDING MAINTENANCE LLC D/B/A ALLIED UNIVERSAL JANITORIAL SERVICES ("Plaintiff" or "AUJS") will move in the United States Courthouse for the Central District of California, Courtroom 10C, 411 West 4th Street, Santa Ana, CA 92701, pursuant to Federal Rule of Civil Procedure 55(b), for an order of final judgment by default  against Defendant Joseph Calcote ("Defendant" or "Calcote"). **Please note: This hearing will be conducted remotely through a Zoom link, which is found on Hon. James V. Selna's District Court webpage. No in-person attendance is required or invited.** This Motion for Default Judgment seeks a permanent injunction, monetary damages, and attorneys' fees and costs. This Motion for Default Judgment is based upon the Memorandum in Support of the Motion, the Declarations of Peggy Grzywacz and Matthew T. Sinnott, and the attachments to those declarations.

Plaintiff served the Complaint on Defendant on July 14, 2022, evidenced by the proof of service of summons on file with this Court. Defendant has not pled, answered, or otherwise defended the action. Default was entered against Defendant on August 11, 2022. Plaintiff will serve this notice, attendant memorandum, and all documents offered in support of same at the address where Defendant was served the Complaint.

DATE: September 23, 2022

Martenson, Hasbrouck & Simon, LLP

By: */s/ Matthew T. Sinnott*
Matthew T. Sinnott
David L. Lewis
Attorneys for Plaintiff
UNIVERSAL BUILDING
MAINTENANCE, LLC

1

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

4874-4625-8480, V. 1

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 55(b), Plaintiff Universal Building Maintenance LLC, dba Allied Universal Janitorial Services ("Plaintiff," "Allied Universal") respectfully requests that the Court enter final judgment by default against Defendant Joseph Calcote ("Calcote" or "Defendant"). The relief sought includes a permanent injunction, liquidated damages pursuant to contract, and attorney's fees.

Beginning just days before he resigned his position, Defendant sent 39 separate emails to his personal email account, attaching 79 documents consisting of trade secret and confidential information owned by Allied Universal. Defendant was entrusted with access to this information because of his position in the company. This information is incredibly valuable to Allied Universal and its competitive advantage in its market. Defendant's theft of this information represents a significant ongoing threat to Allied Universal's business. Defendant has already attempted to use this information for his own benefit while refusing to participate in this lawsuit or otherwise acknowledge this Court's authority. As set forth below, default judgment is appropriate and necessary.

## I.     PROCEDURAL HISTORY

On June 7, 2022, Allied Universal filed its Complaint against Defendant seeking damages and injunctive relief regarding Defendant's theft of trade secrets and confidential information in violation of federal and state law and written contract at the time of his voluntary resignation from Allied Universal. ("Complaint," ECF No. 1.) On June 8, 2022, the Court issued a Summons to Defendant. (ECF No. 6.) On June 10, 2022, Allied Universal filed its Application for Temporary Restraining Order as to Misappropriation of Trade Secrets. (ECF No. 7.) On June 29, 2022, counsel for Allied Universal submitted a declaration evidencing both the exhaustive attempts to locate Defendant and the numerous

attempts to serve Defendant both personally and electronically with the Complaint, Summons, and Application Temporary Restraining Order. ("Supplemental Declaration of Matthew T. Sinnott Regarding Service," or "Sinnott II," ECF No. 11.) On July 5, 2022, the Court issued a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Be Issued, including both a hearing date (July 15, 2022) and briefing schedule for Defendant's opposition. (Order, ECF No. 12.)

Allied Universal served Defendant with the Court's Order, but Defendant did not file nor serve any opposition. (ECF No. 13, Notice of Non-Opposition.) Allied Universal attended the July 15 hearing, but Defendant did not. (Hearing Minutes, ECF No. 14.) On July 20, 2022, the Court granted Plaintiff's request for a Preliminary Injunction against Defendant, and Plaintiff posted its $5,000 bond in support of same. (See ECF Nos. 15, 17.) Plaintiff again electronically served Defendant with the Court's Order. (Declaration of Matthew T. Sinnott in Support of Default Judgment ("Sinnott IV"), ¶ 5.)[1]

On July 15, 2022, Plaintiff filed a proof of service of showing Defendant was personally served with the Complaint, Summons, Application for Temporary Restraining Order, and the Court's July 5, 2022, Order on July 14, 2022. (Proof of Service, ECF No. 18.) Pursuant to Rule 12(a)(1), Defendant was required to plead or otherwise respond to the Complaint by August 4, 2022. Defendant failed to serve or file a pleading or otherwise respond to the Complaint. On August 9, 2022, Plaintiff filed and served its Request for Clerk to Enter Default, wherein Plaintiff confirmed Defendant is not minor or an incompetent person, and not currently in

---

[1] Counsel for Plaintiffs, Matthew T. Sinnott, has previous three declarations in this litigation. For clarity, the first declaration (ECF No. 7-7) entitled "Declaration of Matthew T. Sinnott in Support of Motion for Temporary Restraining Order" will herein be referred to a "Sinnott I"; as noted above, ECF 11 (Sinnott Supplemental Declaration) is referred to as "Sinnott II." The Declaration of Matthew T. Sinnott in Support of Request for Entry of Default" (ECF No. 19) is hereinafter referred to as "Sinnott III"; and the Declaration of Matthew T. Sinnott to be filed in support of this Motion for Default Judgment will hereinafter be referred to as "Sinnott IV."

any military service. (ECF No. 19, Request.) On August 11, 2022, Default was entered against Defendant (ECF No. 20.)

Despite being served all pleadings, supporting documents, and Orders, and despite Plaintiff's exhaustive efforts to contact Defendant by email, text, and correspondence, as of the time of this Motion, Defendant has not appeared in this lawsuit or otherwise responded to any communications by Plaintiff. (ECF No. 11, Sinnott II, ¶ 4-11; ECF No. 19-1, Sinnott III, ¶ 4-6; Sinnott IV, ¶ 7.)

## II.    STATEMENT OF FACTS

As alleged in the Complaint, incorporated herein by reference, between March 19 and 22, 2022, Defendant sent himself 39 emails, attaching a total of 79 documents containing confidential and trade secret information regarding Allied Universal's clients, accounts, and prospective clients in the Southern California region to his personal email address. (ECF No. 1, Compl., ¶¶ 35-97.)

### A.    Defendant's Employment and Scope of Responsibilities.

In December 2018, Allied Universal hired Defendant to serve as its Business Development Manager for the northern Los Angeles, California region. (ECF No. 1, Compl., ¶ 9.) The position of Business Development Manager is integral to Allied Universal's business operations, and as such, Defendant was responsible for expanding and developing Allied Universal's business portfolio in the northern Los Angeles region. (Id. at ¶ 10.) Allied Universal provided Defendant with client leads developed by the company and Defendant was intimately involved in the bidding processes, which included working closely with operations personnel to market Allied Universal's unique service offerings and tailor them to prospective customers in a cost-effective and competitive bid. (Id. at ¶¶ 15, 16.) Because of his intimate work in sales and the bidding process, Defendant had access to Allied Universal's proprietary marketing plans and strategies, pricing platforms and fee structures, bid information, and confidential contact information for all of Allied Universal's prospective customers in the market. (Id. at ¶ 17.) Each of Allied

Universal's customer's preferences are unique and learning each customer's specific preferences takes a considerable investment of time and money. (Id. at ¶ 18.) Defendant's salary was commensurate with the level of trust and responsibility required of his position with Allied Universal. (Id. at ¶ 24.)

**B.    Defendant's Access to Confidential Information and Trade Secrets.**

Because he was responsible for maintaining the quality of existing customer relationships, in addition to driving sales with new customers, Defendant had access to all Allied Universal customers in California, including their pricing structures, cost structures, billing and payment practices, contact information, unique site requirements, and plans for future business or other development with those customers, including prospective cross-marketing opportunities for related Allied Universal service providers. (Id. at ¶ 22.) Much of the value of the information Defendant had access to comes from the fact that it is not known to Allied Universal competitors and having information about its customers or customers unique business needs and preferences allows Allied Universal to tailor their sales approach that is superior to their competitors. (Id. at ¶¶ 25, 26.) Knowledge of pricing and formulae would allow Allied Universal's competitors to undercut Allied Universal on pricing. (Id. at ¶ 28.)

**C.    Allied Universal's Protection of its Confidential Information and Trade Secrets.**

Because of the immense value and sensitivity of Allied Universal's operational protocols, business and strategy plans, and customer information, Allied Universal took concrete steps to protect the confidentiality of this proprietary information. (Id. at ¶ 29.) Each computer issued to an Allied Universal employee is password-protected and requires multiple logins in order to access the application and software programs. (Id. at ¶ 30.) Allied Universal employees also have varying levels of access to Allied Universal's software and application tools,

which is based on whether they have a legitimate business need to access that level of information. (Id. at ¶ 31.) Further, Allied Universal has an employee handbook that has a provision that discusses confidentiality and the requirement that employees, and former employees, must not disclose trade secrets. (Id. at ¶ 32; see also, ECF 7-3, Declaration of Andrew King ("King Decl."), ¶ 9 and Ex. 2 (Employee Handbook) at pp. 12-13.)

### D. Calcote Executed a Confidentiality Agreement with Allied Universal.

All Allied Universal employees who are given access to confidential information are required to sign a confidentiality agreement. (Id. at ¶ 33.). On December 7, 2018, Defendant executed a Confidentiality and Non-Solicitation Agreement (hereinafter, "Agreement") as part of his onboarding process. (Id. at 18.)

Allied Universal uses a password-protected online platform called iCIMS that allows Universal's prospective employees to securely complete and execute onboarding forms and documents, including the Agreement, prior to commencing their employment with Allied Universal. (Declaration of Peggy Grzywacz ("Grzywacz Decl."), ¶ 7.) The onboarding process begins by Allied Universal's Human Resources emailing a link from iCIMS to the potential new employee's designated email address provided to Allied Universal by the potential new employee. (Grzywacz Decl., ¶ 8(a).) The potential new employee must click on the link and enter his unique username and password created by that employee. (Grzywacz Decl., ¶ 8(b).) To successfully complete the onboarding process, prospective employees must review and digitally sign all of Allied Universal's onboarding forms, including the Agreement. (Grzywacz Decl., ¶ 8(d).) Only a potential new employee using his correct username and unique password may electronically access and sign Allied Universal's onboarding documents with his

electronic signature, including the Agreement. (Grzywacz Decl., ¶ 8(d).) Prospective employees can take as much time as they need to review and sign the onboarding documents, including the Agreement. (Grzywacz Decl., ¶ 8(e).) The onboarding process cannot be completed, and a prospective employee's employment cannot therefore commence, unless all forms and documents are reviewed and signed. (Grzywacz Decl., ¶ 8(h).)

In relevant part, the Agreement presented to Defendant in the iCIMS program during his onboarding process defines "Confidential Information" to include: (a) Any "trade secret" as defined in California Civil Code Section 3426, et seq., (b) any information not widely and readily accessible to the general public…which relates to the business, finances, or operations of the Company, its clients, vendors, or any third party with whom the Company has an existing or prospective relationship…[and] business and financial information and technical information [relating to]…vendors, suppliers, consultants, design, research, development, engineering, accounting, selling, marketing, pricing, staffing, security protocols, post orders, and any actual or contemplated trademark, service mark, trade name, or patent…Confidential information expressly includes identities, goals, needs, preferences and strategic plans of individuals and entities served by the Company (collectively, "Company Clients"). (Grzywacz Decl., ¶ 12, Ex. 1.)

The Agreement further provides that the signer (Defendant) acknowledge the following:

> I understand and acknowledge that information concerning Company Clients has independent economic value to the Company and is not readily ascertainable from public sources. I further understand and acknowledge that the Company has expend considerable

/ / /

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

4874-4625-8480, V. 1

time and effort to develop, compile, and protect the confidentiality of that information.

(ECF No. 1, Compl., ¶ 11; ECF No. 1-1, Ex. A to Compl.; Grzywacz Decl., ¶ 12, Ex. 1.)

Additionally, the Agreement further provides in relevant part each of the following provisions:

> **No Disclosure**. I agree that at all times, both during and after the time when I am providing services to the Company, I must maintain the confidentiality of Confidential Information. That is, unless I have received prior express written consent from the Company's CEO in each instance, I will not summarize, disclose, reverse engineer, or otherwise communicate any Confidential Information to any person or entity, whether directly or indirectly, except to the limited extent actually necessary to perform services for the Company…

> . . .

> **Return of Confidential Information**. If the Company provides me with any Confidential Information in a tangible form, I agree to return all such materials (including originals and copies thereof) immediately to the Company upon request. I recognize that the unauthorized taking of any Confidential Information may be a crime under section 499c of the California Penal Code and may also result in civil liability under sections 3426.1 through 3426.11 of the California Civil Code and section 2860 of the California Labor Code.

> . . .

> **Ownership Rights**. I hereby acknowledge and agree that all original works of authorship that are made by me (in whole or in part, either along or jointly with others) during the period that I am performing services for the Company are protectable by copyright ("Works") shall be deemed "works made for hire" for the Company within the meaning of the copyright laws of the United

States and the Company shall be deemed to be the sole author thereof in all territories and for all purposes…

. . .

**No Solicitation**. I further agree that while I am providing services to the Company, and for a period of two (2) years after I stop providing services to the Company for any reason, I will not use any Confidential Information to solicit or attempt to solicit, on behalf of any person or entity other than the Company, business from any Company Client I serviced, directly or indirectly, as a result of my employment with the Company. I further agree that while I am providing services to the Company, and for a period of two (2) years after I stop providing services to the Company for any reason, I will not solicit or attempt to solicit for employment, on behalf of any person or entity other than the Company, any Company employee or any employee employed by the Company six (6) months prior to the end of Employee's employment with the Company.

. . .

**Equitable Relief and Liquidated Damages**. I acknowledge and agree that the provisions set forth in this Agreement are necessary and reasonable to protect the interests of the Company, and that any breach or threatened breach of any provision of this Agreement by me, or at my direction, would cause great and irreparable harm to the Company, for which there would be no adequate remedy at law. Therefore, in addition to any other rights and remedies the Company may have, I agree that the Company, without the necessity of proving actual damages, shall be entitled to temporary and permanent injunctive relief to prevent me from breaching or continuing to breach this Agreement. I further agree that the Company shall be entitled to such relief without posting a bond or making any undertaking. Any such requirement of a bond or undertaking is hereby waived by me, and I acknowledge that in the absence of such a waiver, a bond or undertaking might otherwise be required by the Court. I further acknowledge and agree

9

4874-4625-8480, V. 1

that damages may result if this Agreement is breached and that damages for such breach are difficult to ascertain, and accordingly, I agree to pay to the Company the sum of $100,000 for each such breach as liquidated damages in the event that I breach this Agreement. I also acknowledge and agree that the sum of $100,000 is not unreasonable under the circumstances existing at the time this Agreement is entered into.

. . .

**Governing Law and Forum**. This Agreement shall be construed in accordance with, and governed by, the laws of the State of California. If I have entered into a written arbitration agreement with the Company, the provisions of that arbitration agreement shall govern the resolution of any dispute between the Company and me arising out of or relating to this Agreement, provided that such dispute involves any claim subject to arbitration under such arbitration agreement, except that, pursuant to California Code of Civil Procedure 1281.8, I understand that either party may apply to a California court for any provisional remedy, including a temporary restraining order or preliminary injunction. To the extent any legal action arising from or relating to this Agreement may be properly filed in state or federal court, I hereby consent to the personal jurisdiction of the state courts located in Orange County and the state and federal courts located in Orange County, California, and agree not to seek a transfer of venue from such jurisdiction. With respect to any legal proceeding or portion thereof that is properly adjudicated in state or federal court, the prevailing party shall recover all its costs incurred in prosecuting or defending such legal proceeding or portion thereof, including its reasonable attorneys' fees.

(ECF No. 1, Compl., ¶ 11; ECF No. 1-1, Ex. A to Compl.; Grzywacz Decl., ¶ 12, Ex. 1.)

Lastly, Defendant was presented at the end of the Agreement with the following language:

## **ACCEPTANCE OF AGREEMENT**

**I ACKNOWLEDGE THAT HAVE READ AND UNDERSTAND THIS AGREEMENT, AND THAT I AGREE TO ABIDE BY ALL ITS TERMS. I FURTHER ACKNOWLEDGE THAT I HAVE BEEN ADVISED TO CONSULT WITH MY LEGAL COUNSEL PRIOR TO SIGNING THIS AGREEMENT.**

**IN WITNESS WHEREOF**, the undersigned hereto set their hands and seals as of the dates set forth below:

Defendant electronically signed the Agreement by checking the checkbox on December 7, 2018, at 6:39 p.m. (ECF No. 1, Compl., ¶ 11; ECF No. 1-1, Ex. A to Compl.; Grzywacz Decl., ¶ 12, Ex. 1.)

Once a potential new employee has completed all of the required onboarding documents, he may view copies of his executed documents, and save or print them for his own records. However, the contents of these documents cannot be modified. (Grzywacz Decl., ¶ 8(g).)

Although a limited number of Allied Universal's employees have the ability access and view iCIMS documents, no employee can alter or edit any iCIMS documents without leaving a digital thumbprint. (Grzywacz Decl., ¶ 8(i).) In the event a Prospective Employee forgets his unique password, the Prospective Employee must initiate the process of creating an entirely new password. (Grzywacz Decl., ¶ 8(b).)

### E.      Calcote Violated the Agreement and Stole Confidential and Trade Secret Information from Allied Universal.

On March 21, 2022, Defendant voluntarily terminated his employment relationship with Allied Universal. (ECF No. 1, Compl., ¶ 99.) In late May 2022, Allied Universal was informed by a client that Defendant had approached that client regarding switching its janitorial services provider to Defendant's new employer. (ECF No. 1, Compl., ¶ 101.) In or around the same time, Allied Universal's Associate Counsel for Labor and Employment, Andrew King,

11

reviewed Defendant's company email account to ensure that he had not misappropriated any company trade secrets or confidential information. (ECF No. 7-3, King Decl., ¶¶ 3, 10.) That investigation revealed that between March 19 and March 22, 2022, Defendant sent himself 39 individual emails attaching 79 documents consisting of confidential and trade secret information that Defendant removed without authorization for his personal use and enrichment. (ECF No. 1, Compl., ¶ 97, 98; see also, ECF No. 7-3, King Decl., ¶ 12).

A complete accounting of the individual emails and attachments sent by Defendant from his assigned work email address to his personal email address between March 19 and March 22, 2022, is set forth both in the Complaint and Declaration of Andrew King. (See ECF No. 1, Compl., ¶¶ 36-96; see also, ECF No. 7-3, King Decl., ¶¶ 12a-12qq). These paragraphs set forth the title and description of each document sent, all of which consist of Confidential Information pursuant to the Agreement and trades secrets under statutory law. (See *Id*.)

## F.   Calcote Refuses to Return Confidential and Trade Secret Information.

On May 26, 2022, Allied Universal's counsel sent Defendant a letter along with a copy of his Agreement with Allied Universal. The letter explained that his conduct to illegally obtain trade secrets constituted a clear violation of the Agreement as well as applicable law. The letter provided a time for Defendant to respond and explain his actions. (ECF No. 1, Compl., ¶ 102.) Defendant ignored the letter and continues to be in possession of Allied Universal's confidential information and trade secrets. (ECF No. 1, Compl., ¶ 102; ECF 7-7, Sinnott I, ¶ 2, Ex. 4.) Numerous efforts have been made to contact and serve Defendant since that time; however, Defendant has ignored all such attempts, including answering the Complaint or otherwise appearing in this action. (ECF 11, Sinnott II, ¶¶ 4-11; ECF 19-1, Sinnott III, ¶¶ 6, 9.) Defendant's continued possession of Allied Universal's confidential information evidence a clear, unlawful threat to Allied Universal's

business and provides Defendant with a tremendous – and unfair – competitive advantage. (ECF No. 1, Compl., ¶ 105.)

## III. ARGUMENT

### A.   Jurisdiction

Following an entry of default, Fed. R. Civ. P. 55(b) permits the Court to enter default judgment in the plaintiff's favor. In considering a motion for default judgment, a court must first determine that it possesses "jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

The Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331 because Allied Universal's claim against Defendant under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq., raises a federal question. Allied Universal's remaining claims fall within this Court's supplemental jurisdiction (28 U.S.C. § 1367) because they are so related to the federal claim that they form part of the same case or controversy. (ECF No. 1, Compl., ¶ 3). The Court possesses personal jurisdiction over Defendant because he resided in this District and committed the acts alleged in the Complaint within this District. (ECF No. 1, Compl., ¶ 4 ,9; see also, ECF No. 18, Proof of Service).

### B.   Default Judgment is Warranted Against Defendant

The decision to enter default judgment is left to the sound discretion of the court. See Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980). When deciding whether to grant default judgment, the Ninth Circuit considers the following factors: (1) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the possibility of a dispute concerning material facts; (4) whether default was due to excusable neglect; (5) the possibility of prejudice to the plaintiff if the motion is denied; (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits; and (7) the sum of money at stake in the action. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) ("*Eitel* factors"). "In applying this discretionary standard, default

1  judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189
2  F.R.D. 431, 432 (C.D. Cal.1999). As detailed below, each *Eitel* factor weighs in
3  favor of granting Plaintiff's Motion for Default Judgment against Defendant.
4  Further, the CFTC meets the procedural requirements required by Fed. R. Civ. P.
5  55(b) and the Local Rules of the Court. See Fed. R. Civ. P. 55(b)(2); L.R. 55-1;
6  ECF No. 19. Sinnott III, ¶¶ 6-9 [setting forth information required by L.R. 55-1].)

7        1.    <u>All Six Causes of Action in the Complaint Have Substantive</u>
8              <u>Merit and Are Sufficiently Alleged (*Eitel* Factors 1 and 2).</u>

9        The first two *Eitel* factors assess the substantive merit of the movant's claims
10 and the sufficiency of its pleadings. These factors require that a plaintiff "state a
11 claim upon which it may recover." *Philip Morris, USA, Inc. v. Castworld Prods,*
12 *Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003); see also *Danning v. Lavine*, 572 F.2d
13 1386, 1388 (9th Cir. 1978). In considering a motion for default judgment, "'well-
14 pleaded factual allegations' are accepted as true, except for allegations relating to
15 damages." *Sky Billiards, Inc. v. Loong Star, Inc.*, No. EDCV 14-921 JGB, 2016
16 WL 6661175, at *3 (C.D. Cal. Mar. 17, 2016) (quoting *DirecTV, Inc. v. Hoa*
17 *Huynh*, 503 F.3d 847, 854 (9th Cir. 2007)); see also Fed. R. Civ. P. 8(b)(6) ("An
18 allegation–other than one relating to the amount of damages–is admitted if a
19 responsive pleading is required and the allegation is not denied."). As detailed
20 below, Allied Universal has adequately pleaded its claims against Defendant.

21       a)    *Count I - Violations of 18 U.S.C. § 1832 (Defend Trade*
22             *Secrets Act of 2016)*

23       To succeed under a claim for misappropriation under the DTSA, a plaintiff
24 must establish (1) the existence and ownership of a trade secret, (2) the defendant
25 acquired, disclosed or used said trade secret through improper means; and (3) the
26 defendant's actions damaged the plaintiff. *JEP Grp., Inc. v. San Jose*, 2019 WL
27 8645651, *2 (C.D. Cal. May 22, 2019); *Pellerin v. Honeywell Int'l, Inc.*, 877 F.
28 Supp. 2d 983, 988 (S.D. Cal. 2012).

Under the DTSA, a "trade secret" is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patters, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if – (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). To establish the existence of a trade secret, the plaintiff must first show that the information derives independent economic value from the fact it is not generally known. *Courtesy Temporary Service, Inc. v. Camacho,* 222 Cal.App.3d 1278, 1287 (1990). This is not a high standard. *Masimo Corp.,* 2021 WL 2548690, *5. The plaintiff must also show that it took reasonable steps to maintain the secrecy of the information. *WeRide Corp. v. Huang,* 379 F.Supp.3d 834, 845-846 (N.D. Cal. 2019). Misappropriation is established where the trade secret was acquired and used by a person who had a duty to maintain its secrecy. Cal. Civ. Code § 3426.1(b)(2); *American Credit Indemnity Co. v. Sacks,* 213 Cal.App.3d 622, 637 (1989) (holding that a former employee was prohibited from the unlawful use of trade secrets to solicit customers).

Allied Universal has sufficiently pleaded a cause of action for misappropriation under the DTSA. Allied Universal derives independent economic benefit from the information at issue as it allows the company to tailor its sales pitch to each customer in a manner that is superior to its competitors. (ECF No. 1, Compl., ¶ 26.) This advantage would be eliminated if Allied Universal's

---

15

competitors could similarly tailor their sales pitches and further provide opportunity to competitors to undercut Allied Universal's price quotes. (ECF No. 1, Compl., ¶¶ 27, 28.) Because of the value and sensitivity of this information, Allied Universal took concrete steps to ensure its confidentiality by password-protecting each computer issued to employees, limiting access to this information only to select employees, and requiring employees given access to confidential information to execute a confidentiality agreement. (ECF No. 1, Compl., ¶¶ 29-33.)

Defendant was entrusted with the mentioned confidential trade secrets, yet in the days prior to his resignation, Defendant accessed and surreptitiously took Allied Universal customer lists, customer financial information, customer bids, pricing information, and other proprietary information by emailing himself 39 individual emails attaching 79 documents consisting of confidential and trade secret information that Defendant removed without authorization for his personal use and enrichment. (ECF No. 1, Compl., ¶¶ 97, 98.)

Further, Allied Universal has shown it has been harmed by Defendant's misappropriation of confidential information. After Defendant resigned his employment with Allied Universal, he accepted employment with a direct competitor. (ECF No. 1, Compl., ¶¶ 99-100.) Defendant then contacted a client of Allied Universal, of which Defendant sent himself myriad confidential information, to solicit the client to stop doing business with Allied Universal and hire Defendant's new employer. (ECF No. 1, Compl., ¶ 101.)

b)     *Count II – Breach of Contract*

To plead a claim for breach of contract under California law, a plaintiff must allege: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." Appling v. Wachovia Mortg., FSB, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010) (quoting CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239, 70 Cal.Rptr.3d 667 (Ct. App. 2008)).

"A provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671(b). The burden is on Defendant to prove the provision was unreasonable. *Weber, Lipshie & Co. v. Christian,* 52 Cal.App.4th 645, 654 (1997); *see also Atel Fin. Corp. v. Quaker Coal Co.,* 132 F.Supp.2d 1233, 1244 (N.D. Cal. 2001) ("[D]efendant has met its burden of proving that the liquidated damages provision…was unreasonable under the circumstances existing at the time the contract was made.").

Allied Universal has sufficiently pleaded a cause of action for breach of contract. On December 7, 2018, Defendant executed a valid, enforceable, and binding "Confidentiality and Non-Solicitation Agreement," requiring Defendant to not disclose confidential material and promptly return any confidential material in his possession upon request, in addition to agreeing not to solicit existing business from Allied Universal. (ECF No. 1, Compl., ¶¶ 11, 125.) Allied Universal performed its obligations under the agreement. (ECF No. 1, Compl., ¶ 126.) Defendant breached his agreement with Allied Universal through his taking confidential and trade secret information without authorization on multiple occasions, refusing to return the stolen information, and attempting to use the information to his own financial benefit. (ECF No. 1, Compl., ¶¶ 127, 128.) Defendant additionally breached the agreement by refusing to return Allied Universal's confidential materials promptly upon resignation. (ECF No. 1, Compl., ¶ 129.) Allied Universal has suffered and will continue to suffer damages as a result of Defendant's breach, as shown through Defendant's conduct of attempting to directly solicit an existing client of Allied Universal. (ECF No. 1, Compl., ¶¶ 101, 130.)

/ / /

/ / /

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

c)      *Count III – Misappropriation of Trade Secrets in Violation of the Uniform Trade Secrets Act, California Civil Code §3426 et seq.*

"To state a claim for trade secret misappropriation under California Civil Code § 3426, a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020, citing *Alta Devices, Inc. v. LG Elecs., Inc*., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018). Like the DTSA, California Civil Code § 3426.1(d) similarly defines a trade secret to mean "information ... that (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d)(1)-(2).

As mentioned in Section III.B.1.a., above, Allied Universal has sufficiently pleaded a cause of action for misappropriation under the DTSA. Given the near identical prima facie case for a claim for trade secret misappropriation under California Civil Code § 3426, Allied Universal has sufficiently pleaded a cause of action for this claim as well by way of facts detailed in Section III.B.1.a., above.

d)      *Count IV – Breach of the Duty of Loyalty*

In order to state a claim for breach of duty of loyalty, a plaintiff must plead: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." Id. at *3 (quoting Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 410, 58 Cal.Rptr.3d 527 (2007)). "All employees owe a duty of loyalty to their employers." *E.D.C. Techs. V. Seidel,* 216 F.Supp.3d 1012, 1016 (N.D. Cal. 2016).

/ / /

/ / /

4874-4625-8480, V. 1

Defendant was a high-level employee of Allied Universal and was trusted and expected to devote his full time to the promotion of the company's business interests. (ECF No. 1, Compl., ¶ 145.) Defendant owed a duty to not use his position improperly to profit himself. (ECF No. 1, Compl., ¶ 146.) Defendant breached his duty of loyalty by misappropriating, among other things, Allied Universal's current client pricing lists and existing client lists to his personal email address and downloading large amounts of confidential and proprietary material, while still employed by Allied Universal. (ECF No. 1, Compl., ¶ 147.) As a result of Defendant's conduct, Allied Universal has suffered financial harm. (ECF No. 1, Compl., ¶ 148.)

e)     *Count V – Conversion*

To plead a claim of conversion, a plaintiff must show (1) ownership or right to possession of the property at the time of conversation; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) the plaintiff has suffered harm. *Oakdale Village Group v. Fong,* 43 Cal.App.4th 539, 543-544 (1996). "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. The typical measure of damages for a conversion claim is "[t]he value of the property at the time of the conversion" and "[a] fair compensation for the time and money property expended in pursuit of the property…" *Spates v. Dameron Hosp. Assn.,* 114 Cal.App.4th 208, 221 (2003).

Allied Universal had and has a legal right of possession to the files contained on its internal computer network or the Allied Universal laptop computer utilized by Defendant, including the documents and files taken by Defendant and which are the subject of this lawsuit. (ECF No. 1, Compl., ¶ 150.) Conversely, Defendant had no legal claim to the files he took. (ECF No. 1, Compl., ¶ 151.) Prior to his resignation, Defendant accessed and took Allied Universal's proprietary

19

4874-4625-8480, V. 1

information. (ECF No. 1, Compl., ¶¶ 97, 98.) Allied Universal has been harmed by this conversion, as Defendant accepted a position with a direct competitor and utilized the stolen information to solicit existing Allied Universal clients. (ECF No. 1, Compl., ¶¶ 99-101.)

f)   *Count VI – Intentional Interference with Prospective Economic Advantage*

To plead a claim for intentional interference with prospective business advantage, a plaintiff must allege "(1) a specific economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.,* 117 F.Supp.3d 1092, 116 (C.D. Cal. 2015) (citing *Panavision Int'l, L.P. v. Toeppen,* 945 F.Supp. 1296, 1305 (C.D. Cal. 1996).

Allied Universal has sufficiently pleaded this claim. Allied Universal had and has economic relationships with its customers. (ECF No. 1, Compl., ¶ 155.) Defendant knew of this economic relationship. (ECF No. 1, Compl., ¶ 156.) Allied Universal has alleged Defendant engaged in multiple instances of independent torts against it in furtherance of Defendant's efforts to interfere with its economic relationships. (ECF No. 1, Compl., ¶ 158.) Allied Universal has suffered lost profits as a result of Defendant's use of surreptitiously taken proprietary information related to its existing customers. (ECF No. 1, Compl., ¶¶ 97-101, 160.) Defendant's conduct was a substantial factor in disrupting Allied Universal's economic relationships with its customers. (ECF No. 1, Compl., ¶ 159.)

/ / /

/ / /

/ / /

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

4874-4625-8480, V. 1

2. <u>The Remaining Eitel Factors Support Entry of Default Judgment</u>
<u>(Eitel Factors 3-7)</u>

a) *There is Minimal Possibility of Dispute Concerning Material Facts*

Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. See *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Here, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the Clerk of the Court entered default against Defendant. (ECF Nos. 19, 20 (Request for Default and Entry of Default.) No dispute has been raised regarding the material facts in the complaint, and the likelihood that any genuine issue may exist is, at best, remote. See *Sky Billiards, Inc.*, 2016 WL 6661175, at *5 (defendants' failure to respond "supports the conclusion that the possibility of a dispute as to the material facts is minimal").

b) *There is No Evidence that Default Was Due to Excusable Neglect.*

Defendant's failure to respond to the Complaint is not the result of "excusable neglect." Allied Universal has diligently prosecuted this case since its inception, while Defendant has failed to answer, plead, or defend in this action. In addition to the numerous steps Allied Universal took to attempt to communicate with Defendant, including phone messages, emails, mail delivery, and text messages, Defendant was properly served with the Summons, the Complaint, and all associated papers by a process server on July 14, 2022. (ECF No. 11, Sinnott II, ¶ 4-11; ECF No. 18, proof of service dated July 15, 2022.) Pursuant to Rule 12(a)(1), Defendant was required to plead or otherwise respond to the Complaint by August 4, 2022 (ECF No. 19, Request for Clerk to Enter Default) In that Request, Plaintiff confirmed Defendant is not minor or an incompetent person, and not currently in any military service. (ECF No. 19, Request for Clerk to Enter

4874-4625-8480, V. 1

Default.) On August 11, 2022, Default was entered against Defendant (ECF No. 20.)

In light of these facts, there is nothing to indicate that Defendant's failure to plead or respond to the Complaint is due to excusable neglect. See *Halsey v. Colonial Asset Mgmt.*, No. 5:13-cv-02025, 2014 WL 12601015, at *2 (C.D. Cal. July 17, 2014) ("Defendant was served with the summons and Complaint but has failed to appear in this action. Therefore, there is no indication that Defendant's default is due to excusable neglect, or that the material facts are in dispute.").

> c)   *Allied Universal Will Suffer Prejudice if Default Judgment is Not Entered.*

Allied Universal will suffer prejudice if default judgment is not entered because it "will be deprived of the opportunity to obtain judicial resolution of its claim[s]." *Sky Billiards*, 2016 WL 6661175, at *5; see also *Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998, 1007 (C.D. Cal. 2014) (finding plaintiff would suffer prejudice absent entry of default judgment because of defendant's "unwillingness to cooperate and defend" against claim). The proprietary information taken by Defendant included details related to each customer's unique preferences, a compilation which took a considerable investment of Allied Universal's time and money. (ECF No. 1, Compl., ¶ 18.) Allied Universal entrusted Defendant with its trade secrets and invested a substantial amount of time and money in Defendant to help him effectively perform his duties. (ECF No. 1, Compl., ¶¶ 20-24.) Despite Allied Universal's investment, Defendant took the company's proprietary information for his own use. (ECF No. 1, Compl., ¶¶ 97-101.) In these circumstances, denying Allied Universal's motion for default judgment would effectively deny employers the ability to protect themselves from those who intentionally violate their contractual and statutory duties. Further, failure to enter default judgment would frustrate the important policy goal of protecting trade

secrets. See, e.g., *Kewanee Oil Company v. Bicron Corporation,* 416 U.S. 470, 471 (1974) (stressing "the importance of trade secret protection" and noting "it is the policy of the law, for the advantage of the public, to encourage and protect invention and commercial enterprise").

> d)   *Policy Favoring Decision on the Merits Does Not Warrant Denying Default Judgment*

Although the Federal Rules and public policy favor a decision on the merits, "[d]efendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendant's refusal to participate in this litigation or even communicate with Plaintiff despite numerous attempts to contact him make a decision on the merits impossible. See *Garcia v. Fidelity Mortgage Company, No. C* 05-05144 MHP, 2009 WL 1246921, at *4 (N.D. Cal. May 5, 2009) (granting default judgment against defendant who fled the jurisdiction because his "absence throughout these proceedings makes it unlikely that the case against him can be decided on its merits"). Accordingly, because Plaintiff has sufficiently pleaded facts supporting its claims, the policy favoring decisions of cases on their merits does not warrant denying default judgment in this instance.

> e)   *Sum of Money at Stake*

Finally, the Court considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176 (C.D. Cal. 2002). Here, the amount of money at stake does not warrant denying default judgment. See *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

/ / /

/ / /

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

Pursuant to the Agreement executed by Defendant, and as a result of Defendant's breach of that agreement, Allied Universal requests an award of $3.9 million in liquidated damages (the calculation of which is found in Section III.C., below). As illustrated by similar California trade secret cases, Allied Universal's requested award is not extraordinary, especially considering the value of the misappropriated confidential information and the value Allied Universal invested in developing this information. *See e.g. Philip Morris USA, Inc. v. Castworld Prod., Inc.,* 219 F.R.D. 494, 502 (C.D. Cal. 2003) (granting $2 million award for default judgment in trademark case); *Talavera Hair Prod., Inc. v. Taizhou Yungsung Elec. Appliance Co.,* 2021 WL 3493094, at *15 (S.D. Cal. Aug. 6, 2021) ($26,167,546.73 awarded for copyright, trade dress, and patent infringement claims); *CFTC v. AM. Bullion Exch. ABEX Corp.,* 2014 WL 12603558, at *11 (C.D. Cal. Sept. 16, 2014) ($14 million awarded for default judgment); *CFTC v. Safevest, LLC,* 2009 WL 2448116, at*4-5 (C.D. Cal. July 13, 2006) (default judgment award of $18.4 million in disgorgement and $2 million in civil penalties).

## C.  Remedies and Damages

### 1.  Permanent Injunction

Allied Universal is entitled to a permanent injunction to prevent future harm due to Defendant's misappropriation of its trade secrets and Defendant's ongoing refusal to return the subject confidential information despite two orders from this Court demanding he do so. A plaintiff seeking a permanent injunction must demonstrate (1) that it has suffered irreparable harm; (2) there is no adequate remedy at law; (3) a remedy in equity is warranted after balancing the hardships of the parties; and (4) the injunction furthers the public's interest. *eBay v. MercExchange, LLC,* 547 U.S. 388, 391 (2006).

Courts routinely grant permanent injunctions as part of default judgments. *See e.g. Morrocanoil, Inc. v. Allstate Beauty Products, Inc.,* 847 F.Supp.2d 1197, 1203-04 (C.D. Cal. 2012) (entering default judgment, granting permanent

injunction, and awarding monetary damages); *Wecosign, Inc. v. IFG Holdings, Inc.,* 845 F.Supp.2d 1072, 1083-84 (C.D. Cal. 2012) (same); *Philip Morris USA,* 219 F.R.D. at 502 (same); *PepsiCo v. California Security Cans,* 238 F.Supp.2d 1172, 1178 (C.D. Cal. 2002) (entering default judgment and granting permanent injunction).

This Court has twice previously found that Allied Universal has shown it suffered irreparable harm, that there exists no adequate remedy at law, that an injunction is warranted, and that the injunction would be in the public's interest. (ECF Nos. 12, 15). As alleged in the Complaint and described above, Defendant's conduct was neither isolated nor accidental. Defendant engaged in egregious and systematic acts over the course of multiple days to abscond with Allied Universal's confidential and trade secret information for his own gain and to Allied Universal's detriment. (ECF No. 1, Compl., ¶¶ 97-101.) Rather than admitting his wrongdoing, Defendant has refused to respond to efforts to reach him and refused to participate in litigation. (ECF No. 11, Sinnott II; ECF No. 13, Notice of Non-Opposition; ECF No. 18, Proof of Service; ECF No. 19, Request, Sinnott III, ¶ 6.) Given this history, the only conclusion is that Defendant will continue his pattern of wrongdoing and continue to refuse to return the documents and information unless permanently enjoined by this Court.

### 2.   Damages

Although the Court must make a determination regarding the damages requested in a motion for default judgment, the Court is "not required to conduct an evidentiary hearing to ascertain damages" where evidence of damages has been provided. *Garden City Boxing Club, Inc. v. Aranda*, 384 F. App'x 688, 689 (9th Cir. 2010). The Court may rely on declarations in lieu of a damages hearing. See, e.g., *CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2005 WL 1130588, at *13 (C.D. Cal. Apr. 19, 2005) (finding "no reason to hold an

/ / /

4874-4625-8480, V. 1

evidentiary hearing on damages" because plaintiff submitted documentary evidence was "sufficient" to enter default judgment).

In executing the Agreement, Defendant expressed agreed that should he breach the Agreement, he would be required "to pay to [Allied Universal] the sum of $100,000 for each such breach as liquidated damages," and that "$100,000 is not unreasonable under the circumstances existing at the time this Agreement is entered into." (ECF No. 1, Compl., ¶ 11; ECF No. 1-1, Ex. A to Compl.; Grzywacz Decl., ¶ 12, Ex. 1.)

In the days prior to his resignation, Defendant improperly accessed and took Allied Universal customer lists, customer financial information, customer bids, pricing information, and other proprietary information by emailing himself 39 individual emails attaching 79 confidential and trade secret documents. (ECF No. 1, Compl., ¶ 97.) Each of the 39 emails Defendant sent to himself containing Allied Universal's confidential and trade secret information constitutes a separate and independent breach of the Agreement. *Cadence Design Systems, Inc. v. Avant! Corp.,* 29 Cal.4th 215, 223 (2002). As Defendant expressly agreed, Allied Universal is entitled to $100,000.00 for each of the 39 independent breaches of the Agreement, totaling $3.9 million. Allied Universal requests this Court to issue a liquidated damages award in this amount.

### 3.   Attorneys' Fees

Pursuant to the Local Rules for the Central District of California, Local Rule 55-3, "[w]hen a promissory note, contract or applicable statute provides for the recovery of reasonable attorneys' fees, those fees shall be calculated according to the following schedule:" For judgments over $100,000.00, the attorneys' fees award must be $5,600.00, plus 2% of the judgment amount over $100,000.00.

Allied Universal requests a judgment for, at minimum, $3.9 million. Therefore, Allied Universal is entitled to a base attorneys' fee award of $5,600.00, in addition to 2% of $3.8 million ($3.9 million minus $100,000.00), or $78,000.00.

1    In total, Allied Universal requests an attorneys' fee award for $83,600.00, in

2    accordance with the Local Rules for the Central District of California.

3    **IV. CONCLUSION**

4          For the foregoing reasons, the Court should grant the Motion, enter final

5    judgment by default against Defendants, and issue a final order in the form of the

6    proposed Order submitted herewith.

7
     DATE: September 23, 2022          MARTENSON, HASBROUCK & SIMON, LLP
8

9
                                  By:   */s/ Matthew T. Sinnott*_____
10                                      Matthew T. Sinnott
                                        David L. Lewis
11                                      Attorney for Plaintiff
                                        UNIVERSAL BUILDING MAINTENANCE,
12                                      LLC dba ALLIED UNIVERSAL
                                        JANITORIAL SERVICES
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

## **CERTIFICATE OF SERVICE**

I hereby certify that true and accurate copies of the foregoing (1) PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; (2) DECLARATION OF MATTHEW T. SINNOTT IN SUPPORT OF PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S MOTION FOR DEFAULT JUDGMENT; and (3) DECLARATION OF PEGGY GRZYWACZ IN SUPPORT OF PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S MOTION FOR DEFAULT JUDGMENT have been served upon the opposing party in this matter via U.S. mail to:

Joseph Calcote

28611 Bloom Lane

Santa Clarita, CA 91350

Dated:  September 23, 2022

*/s/  Matthew  T.  Sinnott*
Matthew T. Sinnott, Esq.

---

28

PLAINTIFF UNIVERSAL BUILDING MAINTENANCE LLC'S
NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

4874-4625-8480, V. 1